IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00630-JLK

OTTER PRODUCTS, LLC, and
TREEFROG DEVELOPMENTS, INC.,

      Plaintiffs,

   v.

CLOUDSELLER, LLC,
CLOUDSELLER LTD.,
MEHBOOB ALI RASOOL, and
JOHN DOES 1-10, individually or as corporate/business entities,

      Defendants.

---

**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS (ECF NOS. 26, 48) AND
MOTION TO TRANSFER VENUE (ECF NO. 35)**

---

Before me are two Motions to Dismiss Plaintiffs' Second Amended Complaint and a

Motion to Transfer Venue filed by Defendants Cloudseller, LLC and Mehboob Ali Rasool

("Defendants"). The first Motion to Dismiss requests dismissal of Plaintiffs' Second Amended

Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and

failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* 7/3/2019 Mot. to

Dismiss, ECF No. 26. The second Motion to Dismiss requests dismissal of Plaintiffs' Second

Amended Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure

12(b)(2) and improper venue under Federal Rule of Civil Procedure 12(b)(3). *See* 9/3/2019 Mot.

to Dismiss, ECF No. 48. The Motion to Transfer Venue requests transfer of this action to the

Northern District of Texas in the event it is not dismissed pursuant to Rule 12(b)(2) or (3). *See*

Mot. to Transfer Venue, ECF No. 35. For the reasons stated below, I find that Defendants' Rule

12(b) arguments fail on the merits and that transfer to another venue is unwarranted.

Accordingly, the Motions to Dismiss Plaintiffs' Second Amended Complaint (ECF Nos. 26, 48) and the Motion to Transfer Venue (ECF No. 35) are DENIED.

## I. BACKGROUND

Plaintiffs initiated this lawsuit on March 4, 2019. Plaintiffs filed an amended complaint on May 20, 2019, and I granted Plaintiffs leave to file a second amended complaint on June 19, 2019. Plaintiffs' Second Amended Complaint (ECF No. 25) remains the operative complaint in this case. In it, Plaintiffs allege Defendants' unauthorized sale of Otterbox and LifeProof products through the website www.Amazon.com and unauthorized use of Otter Trademarks (1) violates the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125, regarding trademark infringement; (2) violates 15 U.S.C. § 1125(a)(1)(B) regarding false advertising; (3) violates 15 U.S.C. § 1125(a)(1)(A) regarding unfair competition; (4) violates 15 U.S.C. § 1125(c) regarding trademark dilution; (5) constitutes common law trademark infringement; (6) constitutes unfair and deceptive trade practices in violation of Colo. Rev. Stat. § 6-1-101 *et seq*; and (7) tortiously interferes with Plaintiffs' contract and business relations. *See* Second Am. Compl. at 48-68.

On July 3, 2019, Defendants filed a Motion to Dismiss Plaintiffs' Second Amended Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* 7/3/2019 Mot. to Dismiss. On August 7, 2019, Defendants filed a Motion to Transfer Venue under 28 U.S.C. § 1404(a), arguing that if the case is not dismissed pursuant to Rule 12(b)(2) or (3), it should be transferred to the Northern District of Texas. *See* Mot. to Transfer Venue at 9. On September 3, 2019, new counsel entered an appearance for Defendants and filed another Motion to Dismiss Second Amended Complaint requesting dismissal of Plaintiffs' Second Amended Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and improper venue

under Federal Rule of Civil Procedure 12(b)(3). *See* 9/3/2019 Mot. to Dismiss. Defendants ask

that I consider all Rule 12(b) arguments raised in the Motions to Dismiss together. *See* Reply in

Support of 9/3/2019 Mot. to Dismiss at 1, ECF No. 53.

Because I find that all of Defendants' Rule 12(b) arguments should be denied on the

merits, I need not address Plaintiffs' assertion that Defendants waived the defenses of lack of

personal jurisdiction under Rule 12(b)(2) and improper venue under Rule 12(b)(3) by failing to

assert them in their initial motion to dismiss Plaintiffs' original complaint. *See* Resp. to 7/3/2019

Mot. to Dismiss at 10-11, ECF No. 27; Resp. to 9/3/2019 Mot. to Dismiss at 2-5, ECF No. 52.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(2) Legal Standard

A party may move to dismiss a complaint for lack of personal jurisdiction under Federal

Rule of Civil Procedure 12(b)(2). The plaintiff bears the burden of establishing that the court has

personal jurisdiction over a defendant. *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d

1292, 1295 (10th Cir. 1999). If the district court does not conduct an evidentiary hearing, "the

plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *Id.*

(quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998)).

In determining whether the plaintiff has made a prima facie showing that personal jurisdiction

exists, I accept the well-pleaded allegations of the complaint as true and resolve all factual

disputes in favor of the plaintiff. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063,

1070 (10th Cir. 2008).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a

plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the

exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."

*Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (citing *Soma*, 196 F.3d at 1295). "[I]f jurisdiction is consistent with the due process clause, Colorado's long arm statute authorizes jurisdiction over a nonresident defendant." *Id.* This "requires both that the defendant purposefully established minimum contacts within the forum State and that the assertion of personal jurisdiction would comport with fair play and substantial justice." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (quotations omitted). "A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state." *Benton*, 375 F.3d at 1076 (internal quotations and alterations omitted). "A defendant has 'purposefully directed' its activities at Colorado or its residents when it has (1) taken intentional action, (2) that was expressly aimed at Colorado, (3) with the knowledge that the brunt of the injury from the action would be felt in Colorado." *Pandaw Am. Inc., v. Pandaw Cruises India Pvt. Ltd.*, 842 F. Supp. 2d 1303, 1309-10 (D. Colo. 2012) (citing *Dudnikov*, 514 F.3d at 1071).

## B. Rule 12(b)(3) Legal Standard

The standard of review for a motion to dismiss for improper venue under Rule 12(b)(3) is generally the same as a motion to dismiss for lack of personal jurisdiction. *See, e.g.*, *H&H Transformer, Inc. v. Battelle Energy Alliance, LLC*, No. 09-cv-00442-WYD-BNB, 2009 WL 3530370, at *3 (D. Colo. Oct. 23, 2009). "[A] plaintiff's choice of forum is [typically] given great deference . . . [and] [t]he burden on the party seeking to overcome the chosen forum is significant." *Rudder v. Herriman*, No. 15-cv-01142-CBS, 2015 WL 7075403, at *1 (D. Colo.

Nov. 13, 2015) (citing *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972)).

**C. Rule 12(b)(6) Legal Standard**

Dismissal of a claim under Rule 12(b)(6) is appropriate when a plaintiff fails to state a claim upon which relief can be granted. My role in reviewing "a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim for which relief may be granted." *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)). I must accept all factual allegations in the complaint as true but need not "accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The motion to dismiss should only be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Plausible" does not mean "likely to be true." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Instead, it requires simply a nudge beyond "conceivable." *Id.*

**D. 28 U.S.C. § 1404(a) Legal Standard**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In determining whether transfer is appropriate, the district court considers factors including:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial;

difficulties that may arise from congested dockets; the possibility of the existence
of questions arising in the area of conflict of laws; the advantage of having a local
court determine questions of local law; and, all other considerations of a practical
nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)

(quoting *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)). "No single factor

is determinative, and there is considerable discretion regarding the weight afforded to each

factor." *Grady v. Brodersen*, No. 13-cv-00752-REB-BNB, 2014 WL 4472444, at *1 (D. Colo.

Sept. 22, 2014) (citing *Chrysler*, 928 F.2d at 1516).

## III. DISCUSSION

### A. Rule 12(b)(2) Lack of Personal Jurisdiction

Plaintiffs allege that "[t]his Court has personal jurisdiction over Defendants because they

have expressly aimed tortious activities toward the State of Colorado, purposefully availed

themselves of the privilege of doing business in Colorado, and engaged in significant contacts

with Colorado, including significant and regular sales, shipments, and distribution of infringing

products bearing Plaintiffs' trademarks in Colorado and to Colorado residents." Second Am.

Compl. ¶ 16. Plaintiffs further allege that "Defendants have engaged in these tortious activities

with the knowledge that Plaintiffs are located in Colorado and will be harmed by Defendants'

actions in Colorado," as evidenced by the fact that Defendants received correspondence from

Plaintiffs informing them that their actions are harming Plaintiffs in Colorado where Plaintiffs

are located. *Id.*

Defendants argue that "a significant number of the sales alleged by [Plaintiffs] were to

[Plaintiffs] themselves" and "constitute trap sales [that] should not be considered for purposes of

conferring jurisdiction." 9/3/2019 Mot. to Dismiss at 7. Defendants further contend that their

"total sales into Colorado . . . constitute two percent or less" of their gross sales, and that "Colorado has been no more targeted than any other state." *Id.* In addition, Defendants argue that they "have no control over the orders accepted by Amazon, do not fulfill the shipments, and do not control the inventory once provided to Amazon." Reply in Support of 9/3/2019 Mot. to Dismiss at 5.

Courts in this district and others have found "that a defendant's use of a website to conduct business in the forum state, such as having a website that a customer in the forum state can access and on which the customer can purchase the alleged infringing product, provides a basis for a court's exercise of personal jurisdiction." Recommendation of United States Magistrate Judge, *Otter Products, LLC, et al. v. Phone Rehab, et al.*, No. 1:19-cv-00206-RM-MEH (D. Colo. Sept. 27, 2019) (citing cases).

I find that Plaintiffs have demonstrated sufficient purposeful activity directed at Colorado, including the sale and shipment of the alleged infringing products to Colorado through at least 48 sales of 309 products from July 10, 2018 to June 19, 2019. Second Am. Compl. ¶ 18. Plaintiffs also allege that, in addition to these sales, "Defendants have sold, and continue to regularly sell, a high volume of other infringing products . . . into Colorado and to Colorado residents." *Id.* at ¶ 19.

It does not matter that Amazon, rather than Defendants, is responsible for fulfilling and shipping sales of the allegedly infringing goods to customers in Colorado. In a recent decision concerning claims similar to those in this case, Judge Ebel, sitting for the district court, rejected the argument that personal jurisdiction could not be found where "it is Amazon, and not Defendants, who ultimately ships the infringing goods Defendants sell[ ] in Colorado." *Otter Prods., LLC, et al. v. Big Birds, LLC, et al.*, No. 19-cv-00626-DME-KLM, ECF No. 39 at 4 (D.

Colo. Aug. 9, 2019). Other courts have likewise found personal jurisdiction even where product

sales occurred through and were fulfilled by Amazon. *See, e.g., Standard Process, Inc. v. KDealz

Ltd. Co.*, No. 17-cv-909-jdp, 2018 WL 3059673, at *3 (E.D. Wis. June 20, 2018) (noting that

"[t]he fact that [defendant] conducts [the business of selling the products at issue online] through

Amazon doesn't shield it from personal jurisdiction any more than shipping products via FedEx

would"); *Leach v. Pharmedoc Inc.*, No. CIV-16-1034-M, 2017 WL 943959, at *2 (W.D. Okla.

Mar. 9, 2017) (finding defendant's sale and shipment of the allegedly infringing products to

residents of the state through Amazon.com sufficient to satisfy the minimum contacts inquiry

"even though defendant did not personally manage the [ ] website through which it sold its

products"); *Telebrands Corp. v. Mopnado*, No. 2:14-07967 (JLL) (JAD), 2016 WL 368166, at

*6-7 (D. N.J. Jan. 12, 2016) (holding that the defendant purposefully availed itself of the

privilege of doing business in the state by selling its products to the state's residents via

Amazon.com), *report and recommendation adopted*, No. 14-7967 (JLL) (JAD), 2016 WL

355072 (D. N.J. Jan. 28, 2016).[1] As one court has explained, "[s]ellers cannot expect to avail

themselves of the benefits of the internet-created world market that they purposefully exploit and

---

[1] I note that in a previous case, I allowed jurisdictional discovery to ascertain "[t]he way in
which [the defendant] ha[d] sold its products through Amazon.com and whether it ha[d] sold its
products to Colorado residents . . . ." *Sentegra, LLC v. BLU Products, Inc.*, No. 1:16-cv-00158-
JLK-MJW, ECF No. 13 at 3 (D. Colo. Dec. 20, 2016). In that case, however, the record was
unclear as to whether the defendant had ever sold any of its products to Colorado residents via its
own or another website. Here, while product sales may have been fulfilled by Amazon, there is
no question that the allegedly infringing products were sold by Defendants via Amazon.com,
rather than sold directly by Amazon, to customers in Colorado. *See* Ex. C to 7/3/2019 Mot. to
Dismiss, ECF No. 26-21 (indicating that products were bought *from* the seller "cloudsellerusa"
*on* "Amazon Marketplace").

profit from without accepting the concomitant legal responsibilities that such an expanded

market may bring with it." *Dedvukaj v. Maloney*, 447 F. Supp. 2d 813, 820 (E.D. Mich. 2006).[2]

      Nor does it matter that some of the sales into Colorado were to Plaintiffs. In *Otter*

*Products v. Big Birds*, for example, Judge Ebel found that even if all of the purchases in

Colorado were made by Plaintiffs themselves, "Defendants still voluntarily and knowingly made

these sales to a Colorado resident, thus purposely directing their activity to Colorado," which

"cannot be said to be the result of [Plaintiffs'] <u>unilateral</u> actions." *Otter Prods., LLC, et al. v. Big*

*Birds, LLC, et al.*, No. 19-cv-00626-DME-KLM, ECF No. 39 at 3 (underline in original).

      I also find that Plaintiffs' injuries arise out of Defendants' forum-related activities.

Plaintiffs allege that Defendants, through their interactive Amazon storefront, have advertised

and marketed infringing products to consumers in Colorado. Second Am. Compl. ¶ 177.

Plaintiffs also allege that Defendants, through their interactive Amazon storefront, have accepted

and fulfilled orders of infringing products from consumers in Colorado, and have shipped

significant amounts of infringing products to Colorado through the regular course of business. *Id.*

¶¶ 178-179. Plaintiffs allege that they sent multiple cease and desist letters to Defendants in

November and December 2018 informing Defendants that their conduct was infringing on

---

[2] The *Vitamins Online* case on which Defendants rely is not persuasive. In *Vitamins Online*, the District Court of Utah granted a motion to dismiss for lack of personal jurisdiction, but the court there noted that the plaintiff failed to provide any data concerning the quantity and quality of alleged sales of products to customers in Utah. *Vitamins Online v. Dynamic Industries*, No. 2:13–CV–665 TS, 2014 WL 545864, at *3 (D. Utah Feb. 10, 2014). Moreover, this case appears to be an outlier when compared to more recent decisions in Utah and other districts. *See, e.g.*, *Standard Process*, 2018 WL 3059673, at *3 (conducting business through Amazon does not shield defendant from personal jurisdiction); *Orbit Irrigation Prods. Inc. v. Melnor Inc.*, No. 1:16-cv-137, 2017 WL 1274043, at *4 (D. Utah Apr. 4, 2017) (defendant's intentional sale of its products into the nationwide distribution network established by Amazon was sufficient to constitute purposeful availment); *Leach*, 2017 WL 943959, at *2 (defendant's sale and shipment of allegedly infringing products to residents of the state through Amazon was sufficient to satisfy minimum contacts inquiry).

Plaintiffs' trademarks and causing harm to Plaintiffs. *Id.* at ¶¶ 193-198. According to Plaintiffs, Defendants continued to offer products bearing Plaintiffs' trademarks despite being put on notice of their allegedly unlawful conduct. *Id.* at ¶¶ 199-202.

In this case, the activity that established purposeful availment—i.e., Defendants' sales of allegedly infringing products into Colorado—is the same activity that gave rise to Plaintiffs' claims. And here, as in *Otter Products v. Phone Rehab*, Defendants' conduct eliciting the cease and desist letters is the same conduct alleged to have caused Plaintiffs' injuries. *Otter Prods., LLC, et al. v. Phone Rehab, LLC, et al.*, No. 1:19-cv-00206-RM-MEH, ECF No. 39 at 10. Thus, Plaintiffs' allegations establish the requisite nexus between its claims and Defendants' contacts with Colorado. *See Dudnikov*, 514 F.3d at 1079 (declining to "pick sides" between the but-for and proximate causation tests but finding that "either theory . . . would support a determination that plaintiffs' cause of action arises from the defendants' contact with Colorado").

Finally, I conclude that the exercise of personal jurisdiction is reasonable and fair. "[The] reasonableness analysis requires the weighing of five factors: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *ClearOne Commc'ns., Inc. v. Bowers*, 643 F.3d 735, 764 (10th Cir. 2011) (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1161 (10th Cir. 2010)).

Here, Defendants fail to meet "the burden of presenting a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Emp'rs Mut. Cas.*, 618 F.3d at 1161 (internal quotation marks and brackets omitted). Plaintiffs allege injuries

that occurred in Colorado where they reside and seek relief. While litigating in Colorado may be

less convenient for Defendants than litigating in Texas, Defendants are represented by local

counsel and have not demonstrated that defending this case in Colorado would place them at a

disadvantage. Moreover, Colorado has an interest in resolving the dispute because of the sales to

consumers in Colorado and the alleged infringement of trademarks owned by a Colorado

business. *See Standard Process*, 2018 WL 3059673 at *3. Therefore, Defendants have failed to

present a compelling case that requiring them to litigate this case in Colorado would render

jurisdiction unreasonable.

**B. Rule 12(b)(3) Improper Venue**

Having already found that this Court has personal jurisdiction, I also find that venue is

proper because Defendants have sold infringing products into Colorado. Under 28 U.S.C.

§ 1391(b)(2), the statute governing trademark claims, an action may be brought in "a judicial

district in which a substantial part of the events or omissions giving rise to the claim occurred . . .

." In cases alleging trademark infringement, courts have found that a "substantial part" of the

events giving rise to the claims can occur in any district where consumer confusion is likely. *See,

e.g., Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1094 (D. Or. 2016); *Kaia

Foods, Inc. v. T.J. Bellafiore*, 70 F. Supp. 3d 1178, 1184 (N.D. Cal. 2014); *Golden Scorpio Corp.

v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282, 1286 (D. Ariz. 2009).

As noted above, Defendants have sold allegedly infringing products to customers located

in Colorado. It does not matter whether sales into Colorado constitute a small portion of

Defendants' gross sales. *See Adidas*, 169 F. Supp. 3d at 1095 ("Venue may be proper even where

the defendant sells only a small amount of merchandise into the forum.") (citation omitted).

Thus, for the same reasons discussed above, I find that venue is proper under 29 U.S.C. §

1391(b) and deny Defendants' request to dismiss under Fed. R. Civ. P. 12(b)(3).

## C. Rule 12(b)(6) Failure to State a Claim

Plaintiffs raise seven claims against Defendants: (1) trademark infringement in violation

of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125; (2) false advertising in violation of

the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (3) unfair competition in violation of the Lanham

Act, 15 U.S.C. § 1125(a)(1)(A); (4) trademark dilution in violation of the Lanham Act, 15 U.S.C.

§ 1125(c); (5) common law trademark infringement; (6) unfair, deceptive, and unlawful trade

practices in violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et*

*seq*; and (7) tortious interference with contract and business relations. *See* Second Am. Compl. at

48-68. Defendants' first Motion to Dismiss moved for dismissal of all of Plaintiffs' claims

pursuant to Rule 12(b)(6). *See* 7/3/2019 Mot. to Dismiss at 3-14. I first address Plaintiffs'

Lanham Act claims for trademark infringement and unfair competition (claims 1 and 3) before

turning to the remaining claims in order.

### 1. Claims 1 and 3

Plaintiffs' claims for trademark infringement (15 U.S.C. § 1114) and unfair competition

(15 U.S.C. § 1125(a)(1)(A)) include the same elements: (1) that the plaintiff has a protectable

interest in the mark; (2) that the defendant has used an identical or similar mark in commerce;

and (3) that the defendant's use is likely to confuse consumers.[3] *Derma Pen, LLC v. 4EverYoung*

---

[3] 15 U.S.C. § 1114(1)(a) provides:
(1) Any person who shall, without the consent of the registrant
(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a
registered mark in connection with the sale, offering for sale, distribution, or advertising
of any goods or services on or in connection with which such use is likely to cause
confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the
registrant for the remedies hereinafter provided. Under subsection (b) hereof, the

*Ltd.*, 773 F.3d 1117, 1120 (10th Cir. 2014) (citing *1–800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013)).

Defendants argue that the third element cannot be satisfied because of the first sale doctrine, which provides that the resale of genuine trademarked products generally does not constitute trademark infringement. *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1071 (10th Cir. 2009). Under the first sale doctrine, "the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product." *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1240–41 (10th Cir. 2006). However, a product is not "genuine," and the first sale doctrine does not apply to shield a defendant, "when [the] alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner." *Beltronics*, 562 F.3d at 1072 (quoting *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301 (11th Cir. 2001)). This "material difference" exception is not limited to physical differences and may include differences in warranties or service commitments. *Id.* at 1073 (concluding that the district court did not err in finding, as at least two federal circuits have, that material differences may include warranties and services associated with plaintiff's

---

registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1125(a)(1)(A) provides:
(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

products). Courts have also recognized a "quality control" exception to the first sale doctrine. Under the "quality control" exception, an unauthorized reseller defendant may cause consumer confusion and be liable for trademark infringement if the defendant "fail[s] to abide by the trademark holder's quality controls when distributing the trademarked goods or . . . interfere[s] with the trademark holder's ability to control quality." *Skullcandy, Inc. v. Filter USA, Inc.*, No. 2:18-CV-00748-DAK, 2019 WL 2568010, at *5 (D. Utah June 21, 2019) (citing *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir. 1996); *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009)) (internal quotations and alterations omitted).[4]

a. Material Difference Exception

Turning first to the "material difference" exception, I find that Plaintiffs have sufficiently pleaded that the products Defendants sell are materially different from Plaintiffs' genuine products because they do not come with a warranty. "A material difference is one that consumers consider relevant to a decision about whether to purchase a product." *Davidoff*, 263 F.3d at 1302.

While Defendants argue that products sold through Amazon.com are covered by Plaintiffs' warranty, *see* 7/3/2019 Mot. to Dismiss at 5-7, they fail to consider the distinction between Amazon's online marketplace of various third-party sellers and Amazon.com's official online retailer, which also sells products via the Amazon online marketplace. Defendants have also failed to establish that customers who purchase Otter Products from them are covered by

---

[4] While the Tenth Circuit has not expressly adopted the "quality control" exception, courts in this district and circuit have considered and applied it. *See Otter Prods., LLC, et al. v. Phone Rehab, LLC, et al.*, No. 1:19-cv-00206-RM-MEH, ECF No. 62 at 14-15; *Otter Prods., LLC, et al. v. Wang*, No. 18-cv-03198-CMA-SKC, 2019 WL 1403022, at *4-5 (D. Colo. Mar. 28, 2019); *Skullcandy*, 2019 WL 2568010, at *6-7; *Adolph Coors Co. v. A. Genderson & Sons, Inc.*, 486 F. Supp. 131, 136 (D. Colo. 1980) (stating that a "[d]efendant cannot continue to use [plaintiff's] trademark in a way that confuses the public and deceives the public into purchasing [products] of inferior quality" or "use [plaintiff's] trademark in a way that is likely to damage the goodwill and business reputation of [plaintiff]").

Plaintiffs' warranty. Plaintiffs have adequately alleged that customers who purchase from unauthorized sellers on Amazon (as opposed to authorized sellers including "Amazon.com, Inc.") do not receive Plaintiffs' warranty. *See* Second Am. Compl. ¶¶ 121-123, 180-181.

Defendants also attack Plaintiffs' "ambiguously-worded warranty." *See* 7/3/2019 Mot. to Dismiss at 7. However, the ultimate significance of Plaintiffs' warranty requires a fact-specific inquiry and cannot be determined at the pleading stage when Plaintiffs have alleged that the products sold by Defendants are materially different from genuine products because they are not covered by Plaintiffs' warranty. *See Otter Prods., LLC, et al. v. Big Birds, LLC, et al.*, No. 19-cv-00626-DME-KLM, ECF No. 39 at 8, n.8 (noting "there is a triable issue whether consumers would deem the manufacturer's warranty material to their purchase"); *Brilliance Audio, Inc. v. Haights Cross Communs., Inc.*, 474 F.3d 365, 370 (6th Cir.2007) ("an allegation of a material difference cannot properly be dismissed on 12(b)(6) grounds"); *Tacori Enters. v. Michael Joaillier, Inc.*, 207 F.Supp.3d 799, 805 (S.D. Ohio 2016) (concluding that the difference between plaintiff's standard warranty and the warranty offered by defendant could constitute a material difference and recognizing that the question of materiality is a fact-based inquiry).

b. Quality Control Exception

Even if the "material difference" exception did not apply, I find that Plaintiffs have pleaded facts sufficient to support the "quality control" exception to the first sale doctrine. To state a plausible claim for relief based on the application of the quality control exception, Plaintiffs must allege that (i) they have established legitimate, substantial, and nonpretextual quality control procedures, (ii) they abide by these procedures, and (iii) the nonconforming sales

by Defendants will diminish the value of Plaintiffs' trademark. *See, e.g.*, *Warner-Lambert Co.*, 86 F.3d at 6.

Judge Ebel recently found in a different Otter Products case that the following allegations were sufficient for plaintiffs' "quality control" defense to survive a Rule 12(b)(6) motion:

> [Plaintiffs] require[ ]authorized distributors who sell Otter products online to identify themselves clearly to consumers so that, if consumers have concerns about the quality or a defect in an Otter product, consumers will know who to contact for assistance; to inspect products they receive from Otter in order to remove from their inventory any defective or damaged good before it reaches a consumer; to store Otter products in specified ways to prevent damage; to ship Otter products themselves, and not to allow third parties to fulfill orders on behalf of the authorized online distributor; and not to repackage Otter products. Defendants, on the other hand, do not follow these quality controls; they sell anonymously on Amazon; they do not maintain their own inventory of Otter products but instead allow Amazon to store the Otter products Defendants are reselling and allow Amazon to fulfill Defendants' orders for Otter products. Specific consumers have complained that through anonymous online purchases, they have received Otter products that are defective, of poor quality, have been repackaged, and are in "used" condition despite being sold as "new."

*Otter Prods., LLC, et al. v. Big Birds, LLC, et al.*, No. 19-cv-00626-DME-KLM, ECF No. 39 at 8-9. The same allegations are made here.

Furthermore, Plaintiffs specifically allege that "Defendants' unauthorized advertisement and sale of products bearing the Otter Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer . . . abide by Plaintiffs' quality controls when, in fact, they [do] not" and that this has "materially damaged the value of the Otter Trademarks and caused significant damage to Plaintiffs' business relationships."

Second Am. Compl. ¶¶ 282, 285. Plaintiffs' allegations are sufficient to establish the "quality

control" exception to the first sale doctrine.

Accordingly, Plaintiffs have sufficiently alleged the likelihood of the consumer confusion

element based on the "material difference" and "quality control" exceptions to the first sale

doctrine.

>    *2. Claim 2*

As to Plaintiffs' false advertising claim, section 1125(a)(1)(B) of the Lanham Act

provides:

> (1) Any person who, on or in connection with any goods or services, or any
> container for goods, uses in commerce any word, term, name, symbol, or device,
> or any combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which--
> . . .
> (B) in commercial advertising or promotion, misrepresents the nature,
> characteristics, qualities, or geographic origin of his or her or another person's
> goods, services, or commercial activities, shall be liable in a civil action by any
> person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). For their false advertising claim to survive dismissal under Rule

12(b)(6), Plaintiffs must allege:

> (1) that defendant made material false or misleading representations of fact in
> connection with the commercial advertising or promotion of its product; (2) in
> commerce; (3) that are either likely to cause confusion or mistake as to (a) the
> origin, association or approval of the product with or by another, or (b) the
> characteristics of the goods or services; and (4) injure the plaintiff.

*Digital Ally, Inc. v. Util. Assocs., Inc.*, 882 F.3d 974, 978 (10th Cir. 2018) (quotation omitted).

Here, Plaintiffs claim that Defendants are representing that their products are "new" and

come with Plaintiffs' warranty when they do not. *See* Second Am. Compl. ¶¶ 186-189, 252, 257.

Plaintiffs allege this has caused consumer confusion and harmed Plaintiffs' "business, goodwill,

reputation, and profits." *Id.* ¶ 264. Thus, Plaintiffs have plausibly stated a claim for false advertising under the Lanham Act.

### 3. Claim 4

To establish a claim for trademark dilution under 15 U.S.C. § 1125(c), "a plaintiff must show: (1) it owns a 'famous' mark; (2) the mark was famous before the defendant began its use; and (3) the defendant's use has or will cause 'dilution.'" *Otter Prods., LLC, et al. v. Wang*, 2019 WL 1403022, at *5 (citing *King of the Mt. Sports, Inc. v. Chrysler Corp.*, 968 F. Supp. 568, 577 (D. Colo. 1997)). "Dilution means that defendant's use of the trademark will likely 'blur' or 'tarnish' the plaintiff's mark or harm its reputation." *Id.* (citation omitted).

Plaintiffs plausibly allege that the OTTERBOX® trademark (registered in May 2010) and associated Otter Trademarks are famous because they have been actively used by Plaintiffs and are recognized by consumers who associate the Otter Trademarks with high quality, reliable, and durable products. Second Am. Compl. ¶¶ 33-38. Plaintiffs also allege that Defendants diluted the Otter Trademarks by selling damaged, defective, and poor quality products that received negative reviews from consumers. *Id.* ¶¶ 55-79, 137-154, 308-312. This is enough to plausibly state a trademark dilution claim. *See, e.g.*, *Otter Prods., LLC, et al. v. Wang*, 2019 WL 1403022, at *5 (finding for similar reasons that plaintiffs had stated a claim for trademark dilution under 15 U.S.C. § 1125(c)).

### 4. Claims 5 and 6

Defendants argue that Plaintiffs' state law trademark and Colorado Consumer Protection Act claims fail for the same reasons as Plaintiffs' Lanham Act claims. *See* 7/3/2019 Mot. to Dismiss at 11. Because I have concluded that Plaintiffs' Lanham Act claims survive Defendants'

Motion to Dismiss under Rule 12(b)(6), Plaintiffs' state law claims for trademark infringement and deceptive trade practices survive as well.

### 5. Claim 7

Defendants' argument that Plaintiffs have "conjured a pretextual tortious interference claim" is without merit. *See id.* "To state a claim for intentional interference with contractual relations or prospective business advantage, a plaintiff must allege facts in support of the following elements: (1) the existence of a valid contract or reasonable prospect of having a business relationship; (2) that the defendant knew of the contract or prospective relationship; (3) the defendant intended to induce a breach of the contract or interfere with the prospective business relationship; (4) defendants engaged in conduct which produced a breach of contract or prevented the plaintiff from acquiring or continuing a prospective business relationship; (5) the interference was improper; and (6) the plaintiff suffered damages." *Zimmer Spine, Inc. v. EBI, LLC*, No. 10-cv-03112-LTB-CBS, 2011 WL 4089535, at *2 (D. Colo. Sept. 14, 2011) (citations omitted).

Plaintiffs have alleged that they have entered into agreements with authorized sellers prohibiting sales of Otter Products to unauthorized resellers. Furthermore, Plaintiffs have sent three cease-and-desist letters to Defendants notifying them of this contractual arrangement with authorized sellers and alerting them that these agreements are being breached by Defendants' purchase and resale of Otter Products. *See* Second Am. Compl. ¶¶ 85-87, 193-198, 200, 210-211, 364-365.

### D. Transfer of Venue under 28 U.S.C. § 1404(a)

I have already concluded that venue in this district is proper. Thus, Defendants "bear[ ] the burden of establishing that the existing forum is inconvenient." *Chrysler*, 928 F.2d at 1515.

"Unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (quotation omitted).

Defendants argue that because they reside in Texas, defending this case in Colorado would be inconvenient, burdensome, expensive, and prejudicial, whereas Plaintiffs have "essentially limitless resources . . . to litigate this case in any forum." Mot. to Transfer Venue at 8-9. Unfortunately for Defendants, transferring the burden of inconvenience to Plaintiffs "is not a permissible justification for a change of venue." *Scheidt*, 956 F.2d at 966.

Plaintiffs have chosen this forum, where their businesses are located. Defendants knew that Plaintiffs were located in Colorado and that their actions were allegedly harming Plaintiffs here. Therefore, having considered the relevant factors, I find that Defendants have not shown that a transfer of venue is justified in this case.

## IV. CONCLUSION

For the foregoing reasons, I find that dismissal under Rule 12(b)(2) or (3) is unwarranted because this Court has specific personal jurisdiction over Defendants for purposes of this action and venue here is proper. Additionally, I find that Plaintiffs have plausibly alleged each of the seven claims against Defendants sufficient to survive dismissal under Rule 12(b)(6). Finally, I decline to exercise my discretion to transfer this action to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). Accordingly, the Motions to Dismiss Plaintiffs' Second Amended Complaint (ECF Nos. 26, 48) and the Motion to Transfer Venue (ECF No. 35) are DENIED.

Dated this 3rd day of December, 2019.

John L. Kane
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE